Jones, J.
 

 Neither of the applicants for certificates to operate the respective bus lines was a motor transportation company operating exclusively within the territorial limits of municipal corporations, as comprehended in Section 614-84, General Code. Both of thém sought to extend their operations to county territory over a portion of a route outside of any municipal limits.
 

 In the first case the part of the route outside covered a distance of 300 feet only, and in the other approximately a distance of one mile. But whether the portion outside of the municipal zones was 300 feet or 50 miles, the jurisdiction of the Public Utilities Commission attached. Under Section 614-86
 
 et seq.,
 
 General Code, the commission has the exclusive power to supervise and regulate all motor transportation companies therein defined which operate over a route or parts of a route outside of municipalities. This power is not affected by the fact that a part of the route applied for extends into the municipality. The exercise of this power, under the section named, is qualified by the provisions that the municipality through which the transportation company operates may make certain reasonable police regula
 
 *50
 
 tions, and that the consent of the municipality shall be required in case a company operates under a certificate of convenience and necessity where the “complete ride is wholly within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto * * Ill O. L., 20.
 

 The graver question presented in both cases, however, arises from the construction of Section 614-87, General Code, (111 O. L., 516). The parts of the routes in question were already being operated by existing motor transportation companies which had theretofore been certificated by the commission. The applicants filed their applications for certificates of convenience and necessity to operate over these portions of the routes. In. the applications neither alleged that the existing motor transportation companies were furnishing inadequate service or that additional service was necessary for the convenience of the public. Not only was notice given to such existing motor transportation companies, but the latter appeared at the hearing. On the hearing, however, the applicants offered testimony before the commission tending to prove that the service by the certificated occupying motor transportation-companies was inadequate, and that public convenience and necessity required additional operation. This class of testimony was not given any consideration by the commission, which was evidently of the opinion that the question of adequacy of service was neither germane nor admissible. The following colloquy between counsel
 
 *51
 
 for the applicants and the commission will disclose the legal position of the latter:
 

 “Mr. Becker: Is it the opinion of the commission then that where there is an operation within certain territory that no other operation can take place simultaneously?
 

 “Commissioner Poor: That is what the law says. It says where there is a motor transportation company serving the territory this commission shall not grant a certificate to anybody else until after they first find that the person serving that territory is not giving adequate service or has not the proper facilities to give service there, and then it goes on and says upon our finding that such is the case we shall give that operator sufficient time, not less than 60 days, to put on the service that the commission thinks would be required, and then if they fail to obey the order of the commission to bring up the service according to the order of the commission, then and only then can we grant an additional certificate. * * *
 

 “Commissioner Poor: There is no need arguing it. It is not a question of whether public convenience and necessity requires an operation there or not. Our hands are tied by the existing certificate there. We have no more jurisdiction to grant another certificate there at the present time than we would have a right to grant a certificate to run from Fountain Square in Cincinnati to Peebles Corner.”
 

 In the same colloquy it is disclosed that the commission based its holding upon the provisions of Section 614-87, General Code (111 O. L., 516). That section provides that motor transportation
 
 *52
 
 companies shall not begin to operate without first obtaining from the commission a certificate declaring that public convenience and necessity require such operation. The section then provides:
 

 “The commission shall have the power, after notice and hearing, when the applicant requests a certificate to operate in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, to grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the commission. * * *
 

 “Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate the commission shall not grant such certificate. * * *
 

 “On finding of the Public Utilities Commission that any motor transportation company does not give convenient and necessary service in accordance with the order of such commission such motor transportation company shall be given a reasonable time, not less than sixty days, to provide such service before any existing certificate is canceled or a new one granted over the route mentioned in the finding and order of or hearing before the Public Utilities Commission.”
 

 While the applicants did not allege the inadequacy of service in the printed form of their ap
 
 *53
 
 plications, they later attempted to offer proof of this fact upon the hearing. Since the applicants as a
 
 sine qua non,
 
 before they were permitted to obtain a certificate of convenience, had to prove that the existing service was inadequate, under Section 614-87, General Code, it would be a sufficient compliance with the act, under the usual liberality extended to these proceedings, to offer proof of that fact, although it had not definitely been alleged in their application. This is manifestly so, because the filing of their applications necessarily comprehended that the issue of inadequate service was required to be tried out before the commission. The rejoinder of the commission, as shown in the foregoing colloquy, discloses that the commission was of the opinion that under the section named a certificate could not be granted where the territory was already being served, except by a showing that adequate service was not provided by the existing company; and that even then, the applicant desiring to operate in the preempted territory could not obtain a certificate until the existing operator was given not less than 60 days to provide the service that the commission requires.
 

 We think that the construction the commission gave Section 614-87, General Code, was a proper interpretation thereof; but that in failing to take into consideration the inadequacy of service, which the applicants tendered on the hearing, the commission fell into error. The only method by which a new bus line could enter the pre-empted territory was that provided for in the section last quoted. Before receiving their certificates the applicants
 
 *54
 
 were required to show the inadequacy of - service of the certificated motor transportation companies occupying the routes, and then they could only obtain their certificates of public convenience and necessity if the existing motor transportation companies did not give convenient and necessary service in compliance with the order of the commission, as defined in the last clause of Section 614-87, General Code.
 

 The order of the commission will be reversed solely for the reason that it refused to consider evidence tending to prove the inadequacy of service of the existing certificated bus lines, and the cause will be remanded to the commission for that purpose.
 

 Order reversed.
 

 Marshall, C. J., Matthias, Day, Kinkade and Robinson, JJ., concur.